CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 27, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **MICHAEL A. WILSON,** | ) |
| Plaintiff, | ) Case No. 7:23CV00177 |
| v. | ) **OPINION AND ORDER** |
| **R. MULLINS, ET AL,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Michael A. Wilson, Pro Se Plaintiff; Timothy E. Davis, Assistant Attorney General,* CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for Defendants.*

This prisoner civil rights action under 42 U.S.C. § 1983 is now before me on the Motion for Summary Judgment filed by the remaining defendants: R. Mullins, D. Holland, C. Bower, and G. Perry. The pro se plaintiff, Michael A Wilson, complains that while inventorying his property on August 24, 2022, the defendants tainted his hygiene materials with mace. They offer evidence to the contrary. After review of the record, I conclude that the defendants' motion must be granted.

I. BACKGROUND.

Wilson's claims arose while he was incarcerated at Red Onion State Prison (Red Onion). In a prior Opinion and Order, I described his allegations as follows:

> On August 24, 2022, Red Onion officers moved Wilson out of his cell after he received a disciplinary charge. Defendants Mullins, Holland,

> Bower, and Perry removed Wilson's personal property and returned it to him the next day. Wilson alleges that while these defendants were in possession of his property, they mixed oleoresin capsicum (OC) spray into Wilson's hygiene items. When Wilson applied prayer oil and petroleum jelly to his body, he soon experienced "severe burning" of his skin for which he sought medical attention. Compl. ¶ 17, ECF No. 1.[1] He examined his hygiene products and discovered a liquid substance that he asserts was "consistent with OC security spray." *Id.*

*Wilson v. Mullins*, No. 7:23CV00177, 2023 WL 7027996, at *1 (W.D. Va. Oct. 25, 2023).

That same day, Wilson asked Assistant Warden Bevins "to turn in these contaminated items as evidence to investigators." Wilson Aff. 2, ECF No. 1-1. On September 8, 2022, Wilson alleges that Investigators Shirks and Stanley examined the products that Wilson claimed to be contaminated and confiscated nasal spray, prayer oil, and petroleum jelly. Compl. Ex. 1, ECF No. 1-4. Wilson claims that while they were with him he sprayed his nasal spray six times, and everyone immediately began coughing and gagging. The investigators collected most of the evidence, although Wilson saved some items for possible later testing.

---

[1] Wilson alleges, and video footage shows, that the defendants handled and returned Wilson's property items early on August 25, 2022, the day after his transfer to the prison's Restorative Housing Unit (RHU). Wilson alleges that after he showered that day, he "applied prayer oil and petroleum jelly to various areas of his body. Very quickly [his] skin erupted into severe burning resulting in his seeking medical assistance." Compl. 6, ECF No. 1. He reports that the burning on his skin and rectum "later caused skin rashes." *Id.* at Ex. 6, Wilson Aff. 1, ECF No. 1-1.

In early September 2022, Wilson filed a request for medical attention, stating that he had developed a rash around his "anal" after rubbing lotion mixed with what he believed was OC gas on that area. *Id.* at Ex. 2, ECF No. 1-4. In another request, Wilson asked for video footage to be preserved to prove that he turned in his petroleum jelly, nasal spray, and prayer oil to investigators. Wilson claims that after the August 25, 2022, inventory incident, he was diagnosed with Post Traumatic Stress Disorder and was prescribed Lexapro and Remeron for anxiety and paranoia.[2]

On summary judgment, the defendants offer a completely different version of events.[3] The Virginia Department of Corrections (VDOC) Operating Procedure (OP) governing Restorative Housing Units, provides that two officers may inventory an inmate's personal property without that inmate being present. While in RHU housing, an inmate may only possess items listed in the OP as authorized for that unit.

Due to the nature of a disciplinary charge brought against Wilson on August 24, 2022, officers transferred him to the RHU around 2:00 a.m. on August 25, 2022.

---

[2] Wilson presents these allegations in his verified Complaint and a verified affidavit, ECF Nos. 1 and 1-1.

[3] In support of their summary judgment motion, the defendants offer affidavits from Institutional Investigator B. Bolling, and Program Support Technician Tessa Sloan. Mem. Supp. Mot. Summ. J., ECF No. 23. They have also filed a Declaration of Corey Bower, a correctional officer, ECF No. 27, and have provided copies of video footage of the inventory of Wilson's personal property items that are at issue in this case.

After Wilson had been moved to RHU, Mullins, Holland, Bower, and Perry worked together to pack up Wilson's personal property, move it to the pod floor tables, and inventory it.  During the process, Bower detected an odor of what he believed might be alcohol coming from Wilson's property.  The officers opened Wilson's Vaseline jar to further investigate the smell and the possible presence of alcohol.  They determined that the odor came from a chemical cleaner that security staff had provided to Wilson to clean his cell.  They closed the Vaseline jar.  Bower testifies that no one added any substance to the Vaseline container while it was open, and that he did not see any of Wilson's other hygiene items opened during the inventory process.

The defendants have also provided video footage depicting the property inventory process and returning the property to Wilson on August 25, 2022.  On video, around 2:12 a.m., officers can be seen entering Wilson's cell, retrieving his property items in bags, and moving them into the pod.  Intermittently, the video shows officers return to the cell to remove additional property items, until about 4:22 a.m. when they begin placing the property items on two pod tables.  Shortly thereafter, they begin the inventory process that continued until around 5:25 a.m.  At that point the officers move Wilson's property from the D Building, where he had been housed, to the RHU in the C Building.

Once in the RHU, about 5:26 a.m., the video shows the officers removing Wilson from his cell in restraints. Then, they place the property items that he was permitted to keep inside the RHU cell and return him to the cell. At about 5:35 a.m., the officers left the RHU to take Wilson's remaining property items to the property office.

Bower states that while the officers removed and inventoried Wilson's property on August 25, 2022, Bower never put any substance in Wilson's hygiene products, nor he did not see any other officer doing so. OC spray is issued to officers in a container with a safety nozzle that prevents anyone from accidentally administering the spray. The OC is disbursed from one of these containers as an aerosol, and the top of the container cannot be removed to allow the substance to be poured out. Bower states that he has personally experienced the effects of OC spray in the past. He added that during the handling of Wilson's property that day he did not feel any effects of OC spray, such as stinging or burning, that anyone in the vicinity of the disbursed substance would have experienced. The video footage also does not show officers deploying or reacting to OC spray at any time.

On September 7, 2022, two weeks after the inventory process, medical staff evaluated Wilson for his complaints. He reported that the symptoms — burning at first, then itching — had started a week before, after "he used something that had something in it and he didn't know until he used it." Mot. Supp. Mot. Sum. J. Ex.

3, Sloan Aff. Encl. A, ECF No. 23-3.  From observation during the exam, the medical provider noted Wilson had a steady gait and appeared in no distress.  Notes also indicate that the provider was unable to assess Wilson's buttocks.[4]  Wilson's medical record from August 25, 2022, through February 22, 2023, contains no other complaints from him about itching, burning, or rash, or any evaluation for such symptoms.

After Wilson filed complaints that officers had tampered with his hygiene items, investigators from the VDOC Special Investigation Unit (SIU) interviewed Wilson, Mullins, Perry, and Bower.  The investigators form SIU also collected the products that Wilson claimed had been contaminated with OC spray — including Vaseline, prayer oil, and nasal spray.  The officers did not send the items for lab testing, because the lab could only test for drugs and controlled substances, not for OC spray.  The investigators also reviewed the security camera footage related to the inventory process and did not find any indication on the video that anyone had tampered with Wilson's hygiene items.

---

[4] The medical notes indicate that the nurse provided Wilson with cream to apply topically and Benadryl for five days.

II. D<span>ISCUSSION</span>.

A.

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To preclude summary judgment, a nonmovant must present a "genuine" dispute as to a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To avoid summary judgment, a party must "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his or her favor. *Anderson*, 477 U.S. at 248 (internal quotation marks and citations omitted). A pro se litigant's verified complaint or other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks and citations omitted). The court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (citation omitted). The non-moving party may not rely on

beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir.1992).

B.

"After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation omitted). An Eighth Amendment claim of excessive force involves both an objective and a subjective component. *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). First, the court must ask whether the nature of the force used was objectively harmful enough to establish a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, the court inquires whether the defendant officer "acted with a sufficiently culpable state of mind." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The inmate must establish that force was applied "'maliciously and sadistically for the very purpose of causing harm,'" rather than "'in a good faith effort to maintain or restore discipline.'"[5] *Whitley,* 475 U.S. at 320–21 (citation omitted).

---

[5] Wilson does not state whether he is asserting his constitutional claim here as excessive force or deliberate indifference to a hazardous living condition. At least one court has construed similar allegations as raising an excessive force claim. *Fernandez v. Baca*, No. 3:16-CV-00350-RCJ-WGC, 2018 WL 893916, at *3 (D. Nev. Feb. 14, 2018) ("[S]urreptitiously poisoning an inmate . . . is reasonably characterized as force applied maliciously or sadistically to cause harm with no good-faith purpose of restoring or maintaining order and discipline"). Because Wilson refers to the defendants' alleged

If Wilson were facing a Motion to Dismiss, I would have to deny it. Taking his allegations as true, as required on a Motion to Dismiss, *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023), Wilson asserts that for no legitimate penological reason, the defendants placed a noxious substance in his hygiene products to cause him harm when he used those products, and he did suffer harm (burning and itching of his skin and rashes for which he sought medical attention). He has alleged events that meet both the objective and subjective facets of the excessive force standard. But the defendants have filed a Motion for Summary Judgment that Wilson cannot defeat based merely on the allegations in the Complaint.

At the summary judgment stage, the party opposing the motion must present admissible evidence on which a jury could find in his favor. Wilson simply has produced no such evidence to contradict the defendants' evidence that they did not put OC spray into his hygiene products to harm him. First, it is undisputed that the containers of OC spray issued to officers do not have lids they could remove to pour the substance into any other container. Rather, OC spray is dispersed as an aerosol that would cause adverse physical effects to anyone in the area. Bower states that he did not dispense OC spray on August 25, 2022, or see anyone else do so, and he did not experience any of the effects of OC spray that day. Second, the video footage

---

actions in this case as malicious, I will construe his Complaint as asserting an excessive force claim.

from August 25, 2022, does not depict any officer putting anything into Wilson's property items or any officer reacting to OC spray. While Wilson's verified Complaint and Affidavit assert that the officers did place some substance in his hygiene items, Wilson provides no factual basis on which he could have had personal knowledge that the defendants took such actions. He was not present, and no such actions appear on the video footage, all of which I have reviewed. A verified complaint or affidavit can support a plaintiff's defense to summary judgment evidence only if based on personal knowledge. *Goodman*, 986 F.3d at 498. At most, Wilson's accusation that the defendants purposely tainted these items is based merely on his supposition from the symptoms he allegedly experienced after using the items in the RHU. Wilson's assertions are nothing more than speculation not based in personal knowledge, which cannot withstand the evidence the defendants have presented in support of summary judgment. *Baber*, 977 F.2d at 874–75.

Third, the defendants present evidence that after the return of Wilson's property on August 25, 2022, he did not seek medical attention until nearly two weeks later, and then, only for an isolated rash near his anus. In the days immediately following his first alleged application of petroleum jelly on August 25, 2022, he did not file any request for medical care. Likewise, after a September 7, 2022, medical exam, Wilson did not seek medical attention for any symptom or condition that he now alleges to be linked to the supposedly tainted hygiene items.

Fourth, Wilson offers no admissible evidence that any of his hygiene items contained OC spray. It is undisputed that SIU officers did not have these items tested for OC spray, as they had no means to do so. Wilson asserts that he has saved some of the supposedly tainted items so the court can investigate and arrange to have them tested for the presence of OC spray. He also asks the court to obtain video footage from September 8, 2022, to show that when SIU officers confiscated his hygiene items, and when he pumped his nasal spray, it caused them all to cough.[6] Finally, Wilson asserts that the officers could have tainted his hygiene items while off camera.

While the court must liberally construe pro se pleadings, the plaintiff's indigent status does not entitle him to court assistance to undertake or fund his efforts to develop evidence to support his case, such as obtaining scientific testing of items for foreign substances. *Hill v. Exec. Off. For United States Att'ys*, No. 4:17CV27, 2017 WL 5079148, at *3 (W.D. Va. July 19, 2017); *see Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993) (holding that 28 U.S.C. § 1915 does not require the government to pay the costs of litigation expenses for indigent litigants). The record indicates that VDOC officials preserved video from September 8, 2022, which Wilson wants the court to obtain and review. However, even if the court procured

---

[6] Wilson failed to file any request or motion seeking production of video from September 8, 2022.

this video and it depicted officers coughing or otherwise adversely reacting to Wilson's nasal spray, this scene would not prove whether the product contained OC spray or, more importantly, whether the defendants placed OC spray in that product. Wilson's assertions about what this video would depict or what officers may have done while off camera is nothing more than speculation or conclusory assertion and does not constitute evidence sufficient to withstand summary judgment on this issue. *Baber*, 977 F.2d at 874–75.

For the stated reasons, I find no genuine issue of material fact in the record on which Wilson could prove to a factfinder that the defendants violated his constitutional rights. Therefore, I conclude that the defendants are entitled to summary judgment as a matter of law as to Wilson's claims in this action.[7]

### III. CONCLUSION.

Based on the foregoing, it is hereby **ORDERED** that the Motion for Summary Judgment filed by defendants Mullins, Holland, Bower, and Perry, ECF No. 22, is GRANTED,

A separate Judgment will enter herewith.

---

[7] In addition to Wilson's constitutional claims, he asserts that the defendants' actions violated state law and VDOC policy. He offers no factual support for these claims, and the court is not obligated to construct such claims for him. Moreover, state officials' violations of state regulations or policies do not give rise to any separate federal constitutional claim as required to be actionable under § 1983. *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).

ENTER: August 27, 2024

/s/  JAMES P. JONES
Senior United States District Judge